# United States Court of Appeals
## For the First Circuit

No. 13-1690

UNITED STATES OF AMERICA,

Appellee,

v.

HIRAM M. FIGUEROA-FIGUEROA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

Hector E. Guzmán-Silva, Federal Public Defender, Hector L. Ramos-Vega, Supervisory Assistant Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, on brief for appellee.

July 1, 2015

**LIPEZ, Circuit Judge**.  On two consecutive days in March 2012, Hiram L. Figueroa-Figueroa ("Figueroa") engaged in a total of six acts of violence, all at gunpoint.[1]  He commandeered a vehicle, forced the driver from the car, and took money and other items from the victim; stole two women's handbags in separate incidents; demanded money from a man pumping gas; forced a motorist who was withdrawing cash from an ATM to turn over the money and his car; and, while unsuccessfully trying to escape from police officers, brandished a loaded revolver.  Figueroa was charged with numerous Puerto Rico offenses and, under federal law, being a felon in possession of a firearm.[2]  See 18 U.S.C. §§ 922(g)(1), 924(a)(2).

After pleading guilty to the federal charge, Figueroa was sentenced to an 87-month term of imprisonment to run consecutively to his previously imposed 12-year sentence on the commonwealth charges.  On appeal, Figueroa claims that the district court erroneously ignored a provision of the United States Sentencing Guidelines ("the Guidelines") requiring concurrent sentencing for the federal and state offenses.  See U.S.S.G. § 5G1.3(b) (2012). Finding the sentence as imposed to be proper, we affirm.

---

[1] Because this appeal follows a guilty plea, we draw the background facts from the plea colloquy and sentencing materials. See United States v. Whitlow, 714 F.3d 41, 42 (1st Cir. 2013).

[2] The federal charge stemmed from Figueroa's use of a gun when resisting arrest.  Officers had confronted him based on a description given by a witness to one of the robberies.

## I. Background

Figueroa's two-day crime spree resulted in six robbery convictions under Puerto Rico law,[3] each with a three-year term of imprisonment to be served concurrently with the other five, and nine Puerto Rico weapons convictions, each with a one-year sentence to be served consecutively with each other and with the term for the robbery charges. Figueroa was thus sentenced to a total of twelve years for the state crimes: nine years for the weapons violations and three for the robberies. That term of imprisonment was imposed in January 2013; the federal sentencing proceedings took place three months later, in April.

The presentence investigation report ("PSR") prepared in advance of the federal sentencing, as amended, set Figueroa's adjusted offense level at 25. That calculation included a four-level enhancement because Figueroa had used and possessed a firearm and ammunition in connection with another felony offense. See U.S.S.G. § 2K2.1(b)(6)(B). Although the other offense was not identified, it is undisputed that the PSR relied on some criminal activity prosecuted by the commonwealth to boost Figueroa's recommended total Guidelines offense level above the level that otherwise would have applied for unlawfully possessing a firearm.

---

[3] Although Puerto Rico is not a state, we have long treated "commonwealth" crimes as "state" crimes under the Guidelines. See United States v. Torres-Rosa, 209 F.3d 4, 8 (1st Cir. 2000). We thus use that label throughout this opinion to refer to Figueroa's offenses under Puerto Rico law.

The resulting advisory sentencing range was 70 to 87 months' imprisonment.

In his federal sentencing memorandum, Figueroa asked the court to impose his federal term concurrent with his commonwealth sentence "as it involves the same facts . . . [and] specifically include[s] a weapons charge." He invoked § 5G1.3 of the Guidelines, which explains when a later federal sentence must be imposed consecutively or concurrently with a prior undischarged term of imprisonment, see § 5G1.3(a), (b), and when a court has discretion to choose the approach, see § 5G1.3(c). In its memorandum, the government urged an 87-month term of imprisonment. The government noted that the court had the discretion to impose a concurrent or consecutive sentence, but it made no recommendation on that subject.

At Figueroa's federal sentencing hearing, his attorney requested a sentence of 70 months -- the low end of the Guidelines range -- and argued that Figueroa's federal and state sentences should be concurrent because "[s]ome of the events" underlying the state sentence "are relevant to this sentence." In advocating for a concurrent sentence, defense counsel expressed her belief that Figueroa would not be eligible for early release from his state sentence on the weapons charges, but admitted uncertainty on that point. The prosecutor, after detailing Figueroa's history of "serious crimes," recommended a consecutive sentence of 87 months

based on the sentencing factors listed in 18 U.S.C. § 3553(a).[4] Neither party referenced Guidelines § 5G1.3(b).

The district court accepted the PSR calculation and the resulting sentencing range of 70 to 87 months. Acknowledging its duty to consider the § 3553(a) factors to determine the appropriate term of imprisonment, the court then reviewed Figueroa's personal and criminal background, including his failure to satisfy conditions associated with lenient sentences he had received for crimes in 2002 and 2007. The court recognized that Figueroa's actions may have stemmed in part from his chronic drug abuse and emotional problems, but observed that "right now he is acting like a time bomb." Noting that the statutory factors were pertinent to both "what is the proper sentence and whether that sentence is to be imposed concurrent or consecutive to the State sentence," the court determined that a consecutive sentence of 87 months was appropriate and "not . . . harsher th[a]n necessary."

Following the court's explanation, defense counsel indicated that a motion for reconsideration might be filed and, if so, it would clarify whether Figueroa will be required to serve out

---

[4] The prosecutor explicitly pointed to the court's obligation to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Other factors a sentencing court must consider include the need to "provide just punishment for the offense," "afford adequate deterrence," "protect the public from further crimes of the defendant," and provide the defendant with needed "training, medical care, or other correctional treatment in the most effective manner." Id. § 3553(a)(2)(A)-(D).

the full sentence for the state weapons violations.  The court then responded as follows:

> If the argument is that he will have to serve 12 natural years and then the 8 years [i.e., the federal sentence], let me tell you that the sentence that I imposed is extremely lenient even assuming that he gets a 12 year sentence.  I will not vary the sentence.  I think that the defendant needs a harsh sentence.  He placed the li[ves] of five individuals at risk.  He has been receiving lenient sentences in the past, he has done nothing to rehabilitate himself.  He has not come to terms with the fact[] that he needs rehabilitation.  He is lucky that I didn't sentence him pursuant to the Statute.[5]

Figueroa did move for reconsideration, complaining that the amended PSR improperly suggested that he received only a three-year state sentence for all of the criminal activity committed on March 11 and 12, 2012.  The motion emphasized that he was sentenced to a 12-year term and reported that he will not qualify for early release.  The motion further urged reconsideration of the impact of his mental health and drug abuse, noting that he did not harm his victims and was "an addict looking for money for his 'fix.'"  The motion asserted that Figueroa was being punished for his conduct with a "stiff" state sentence and, hence, "[m]aking [his federal] sentence consecutive is imposing a sentence longer than necessary under 18 U.S.C. § 3553."  The motion did not mention Guidelines § 5G1.3.

---

[5] In referring to "the Statute," the court may have meant the statutory maximum of ten years.  See 18 U.S.C. § 924(a)(2).

-6-

In response, the government argued that the district court had no authority to reconsider the sentence, see United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (stating that "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence" (quoting United States v. Dotz, 455 F.3d 644, 648 (6th Cir. 2006))), and cited, inter alia, Guidelines § 5G1.3 to support its assertion that the court properly exercised its discretion to impose a consecutive sentence. The district court never ruled on the motion for reconsideration.[6]

## II. Discussion

### A. Standard of Review

Criminal sentences ordinarily are reviewed for procedural and substantive reasonableness under the abuse-of-discretion standard. See, e.g., United States v. Rivera-González, 776 F.3d 45, 48 (1st Cir. 2015). Within that deferential standard, subsidiary matters of law are afforded de novo scrutiny and findings of fact are evaluated for clear error. Id. The "procedural dimension" of sentencing review includes the correctness of the court's application of the Guidelines, while "[t]he substantive dimension focuses on the duration of the sentence in light of the totality of the circumstances." United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014).

-------

[6] Because we affirm the sentence, the district court's failure to rule on the motion to reconsider is immaterial.

Figueroa asserts that the district court committed procedural error, and consequently abused its discretion, by failing to consider § 5G1.3(b) and its guidance that his federal sentence must be imposed to run concurrently with his undischarged state sentence. The government asserts that Figueroa failed to preserve this claim in the district court and it should therefore be reviewed only for plain error. See United States v. Santiago-Burgos, 750 F.3d 19, 24 (1st Cir. 2014). The government points out that, despite invoking § 5G1.3(b) in his sentencing memorandum, Figueroa did not rely on that provision at his sentencing hearing and never argued to the district court that it had misapplied the Guidelines or committed procedural error. That omission is particularly significant, the government argues, because Figueroa carried the burden of proving that § 5G1.3(b) applies. See United States v. Carrasco-de-Jesús, 589 F.3d 22, 28 (1st Cir. 2009).

Although the circumstances here may amount to forfeiture, we need not dwell on that issue. Even under the standard of review applied to preserved claims, Figueroa's assertion of error is unavailing.

## B. Legal Principles

Pursuant to federal statutory law, a sentence imposed on a defendant who is "already subject to an undischarged term of imprisonment" may run either concurrently or consecutively as the court deems appropriate, with exceptions that are inapplicable

here.  18 U.S.C. § 3584(a); see also Setser v. United States, 132 S. Ct. 1463, 1467 (2012) (describing § 3584).  In making its choice, the court is directed to consider the factors listed in § 3553(a), see 18 U.S.C. § 3584(b), which include any applicable sentencing guidelines and policy statements, see id. § 3553(a)(4), (5); see also Carrasco-de-Jesús, 589 F.3d at 27.  The Guidelines, of course, are now advisory rather than mandatory.  See, e.g., United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014). Nonetheless, "even though sentencing judges are free to impose non-Guidelines sentences in appropriate cases, 'district courts must still give respectful consideration to the now-advisory Guidelines (and their accompanying policy statements).'" Id. at 67 (quoting Pepper v. United States, 562 U.S. 476, 501 (2011)).

At issue here are two subsections of Guidelines § 5G1.3.[7]

---

[7] In the November 2012 version of the Guidelines, § 5G1.3 stated, in pertinent part, as follows:

(a) [explaining when sentences must run consecutively]

(b) If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed . . . to run concurrently to the remainder of the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently,

Subsection (b), which Figueroa claims applies, calls for concurrent sentences when two factors exist: (1) the defendant's undischarged term of imprisonment stemmed from "another offense that is relevant conduct to the instant offense of conviction" under certain sections of § 1B1.3, and (2) that other relevant-conduct crime "was the basis for an increase in the offense level" for the instant conviction under Chapters Two or Three of the Guidelines. Subsection (c), claimed applicable by the government, allows a court in any case not governed by the other subsections to choose concurrent, partially concurrent, or consecutive sentences "to achieve a reasonable punishment for the instant offense."

## C. Analysis

Figueroa insists that subsection (b) of § 5G1.3 applies here because the PSR, and the district court in turn, treated the state crimes underlying his undischarged term of imprisonment as "relevant conduct" under the Guidelines and, hence, factored those crimes into the calculation of his federal sentence.[8] In other

---

partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

[8] "Relevant conduct" includes "all acts and omissions committed . . . by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," and, with respect to certain types of crimes, "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(1)(A), (a)(2).

-10-

words, he argues that the court should have imposed a concurrent federal sentence because his state crimes were used to boost his Guidelines offense level, thereby increasing the length of his federal sentence. That argument, however, misses its mark. The commentary to § 5G1.3 states that subsection (b) applies only where "all of the prior offense" both is relevant conduct and increases the total Guidelines offense level. See U.S.S.G. § 5G1.3 cmt. n.2(A) (emphasis added). The commentary further explains that "[c]ases in which only part of the prior offense is relevant conduct to the instant offense are covered under subsection (c)." Id. At the sentencing hearing, defense counsel recognized that Figueroa's state crimes included conduct distinct from his federal offense, observing that "[s]ome of the events" underlying the state sentence "are relevant to this sentence." The district court similarly appeared to draw that distinction when it commented, while describing Figueroa's escapades, that the violent behavior was "different illegal conduct" from his federal unlawful firearm possession, which related to his conduct during apprehension.

Even if all of his state offenses were "relevant conduct," however, § 5G1.3(b) would not apply unless they all also contributed to an increase in his Guidelines offense level. See United States v. Dunbar, 660 F.3d 54, 57 (1st Cir. 2011) (per curiam) (rejecting applicability of § 5G1.3(b) where relevant conduct "had no causative effect on the federal range or sentence"

(emphasis omitted)); Carrasco-de-Jesús, 589 F.3d at 28 (rejecting an interpretation of § 5G1.3(b) "under which an incremental loss that would not have affected the offense level could nonetheless be regarded as forming the 'basis' for an increase in that level"). As described above, the PSR assigned Figueroa a four-level enhancement in his Guidelines offense level because he "used and possessed a firearm and ammunition in connection with another felony offense." Second Amended PSR at 3 (citing U.S.S.G. § 2K2.1(b)(6)(B)). Although Figueroa committed multiple such offenses during the two days preceding his arrest, leading to six convictions for robbery with sentences to be served concurrently, only one qualifying offense was needed to trigger the enhancement. Hence, most of his undischarged state term of imprisonment stems from criminal activity that did not impact his adjusted offense level, placing his circumstances outside the scope of subsection (b) and squarely within the coverage of subsection (c).

A refusal to apply subsection (b) where the defendant had "surplus" relevant conduct -- i.e., more prior criminal acts than necessary to reach the Guidelines calculation -- is consistent with that provision's purpose to avoid or mitigate double punishment. We have concluded that "[n]o such double punishment is threatened where . . . the relevant conduct did not affect the governing final guideline calculation." Dunbar, 660 F.3d at 57 (emphasis omitted). Here, too, where there is little overlap in the criminal activity

-12-

that determined Figueroa's state and federal terms of imprisonment, the Guidelines provided the district court with the discretion under subsection (c) to decide how much, if any, of the federal sentence should run concurrently with his undischarged state term.

Figueroa wisely does not argue on appeal that the district court abused its discretion in finding that the considerations under § 3553(a), aside from Guidelines § 5G1.3, support a consecutive sentence. The district court adequately explained why it concluded that Figueroa should serve a lengthy sentence despite his personal challenges. As its choice of a consecutive period of incarceration was authorized by statute and consistent with the Guidelines, we have no basis for disturbing the sentence imposed.[9]

## III.

Having found that the district court did not err by failing to apply subsection (b) of Guidelines § 5G1.3, we affirm its sentencing judgment.

So ordered.

---

[9] We thus need not reach the government's assertion that any error in imposing a consecutive term would in any event be harmless because Figueroa is serving his federal sentence first, and state authorities are free to disregard the federal court's chosen approach. See Setser, 132 S. Ct. at 1471 (noting that, if a prisoner "serves his federal sentence first, the State will decide whether to give him credit against his state sentences without being bound by what the district court or the Bureau [of Prisons] said on the matter").